UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE C. JACKSON,<br>On behalf of herself and all others<br>similarly situated,<br>　　　　Plaintiff<br><br>v.<br><br>COMMONWEALTH RECEIVABLES, INC., and<br>CHAD E. GOLDSTONE,<br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-11381-MLW<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION TO DISMISS COUNTS I AND II OF DEFENDANTS'
COUNTERCLAIM, AND SPECIAL MOTION TO DISMISS COUNT II
PURSUANT TO G.L. c. 231, §59H**

**Introduction**

This action was filed to obtain redress for defendants' multiple violations of law in connection with their attempted collection of an alleged credit card debt.  Plaintiff has asserted both individual and class action claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA") and the Massachusetts Consumer Protection Act, G.L. c. 93A, §2.  In her individual causes of action, plaintiff contends that defendants subjected her to collection activity, including litigation, based on a debt for which they had no evidence of ownership, assignment, or other legal interest.  The class claims arise out of defendants' carrying out consumer debt collection activities without being licensed in accordance with Massachusetts law, as well as deceptive statements made in dunning letters sent to consumer debtors.

**Procedural Background**

After service was effectuated on defendants, they filed a joint answer and counterclaim. The "counterclaim" set forth a single count seeking attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3). Shortly after plaintiff informed defendants of her intent to move to dismiss the "counterclaim" and the reasons therefore (*see* "Certification," *infra*), defendants filed an "Amended Answer and Counterclaim" ("AAC") which added a second count for "abuse of process."

Each of the counterclaims should be dismissed. Count I should be dismissed for failing to state a claim upon which relief can be granted, because the statute on which it is predicated - section 1692k(a)(3) of FDCPA - does not constitute or provide any basis for a discrete cause of action. Count II should be dismissed because defendants' "abuse of process" counterclaim is barred by the *Noerr-Pennington* doctrine. In addition, Count II is subject to dismissal pursuant to G.L. c. 231, §59H, the Massachusetts "anti-SLAPP" statute.

**Argument**

When considering a motion to dismiss, the Court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." *Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir. 1999)(citation omitted). While the standard is a liberal one, it does not mean that it is "toothless." *Zeuss Projects Ltd. V. Perez & Cia,* 187 F.R.D. 23, 26 (D.P.R. 1999). In order to survive the motion, the pleading at issue must contain sufficient factual allegations "regarding each material element necessary to sustain recovery." *Gooly v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir. 1988) Moreover, the non-moving party cannot rely on mere "'bald assertions' or

legal conclusions." *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir. 1996), quoting *Wash.Legal Found. V. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir. 1993).

### I. COUNT I FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE 15 U.S.C. §1692k(a)(3) DOES NOT CONSTITUTE, OR PROVIDE A BASIS FOR, A CAUSE OF ACTION.

Count I of defendants' counterclaim is entitled "Frivolous claims" and seeks to recover "costs and expenses, including attorneys' fees and other costs incurred in responding to extortionate claims and a lawsuit." Counterclaim, ¶12. It purports to be based on 15 U.S.C. §1692k(a)(3): "Jackson's suit and purported claims against Commonwealth and Goldstone are frivolous, and have been brought in bad faith and for purposes of harassment within the meaning of 15 U.S.C. §1692k(a)(3)." Counterclaim, ¶11.

The text of section 1692k(a)(3) reads as follows:

> (3) . . . On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

The plain meaning of the statutory language is that this section does not constitute, or provide a basis for, a cause of action which can be the subject of a counterclaim. The "preeminent canon of statutory interpretation" is the presumption "that [the] legislature says in a statute what it means and means in a statute what it says there.'" *Bedroc Limited, LLC v. United States,* 541 U.S. 176, 183, 124 S.Ct. 1587 (2004), quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146 (1992). Thus, "[the] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* See *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 125 S.Ct

3

2611, 2626 (2005)("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.").

Not surprisingly, the overwhelming weight of authority is that section 1692k(a)(3) does not create a cause of action.  Thus, in *Taylor v. Frost-Arnett Company of Tennessee,* 1998 WL 472052 (E.D.La. Aug. 5, 1998), defendant asserted a counterclaim seeking attorney's fees pursuant to section 1692k(a)(3) on the basis that plaintiff's FDCPA complaint "was brought in bad faith and for the purpose of harassment."  The court granted plaintiff's motion to dismiss, declaring:

> The bad faith and harassment allegations of the counterclaim, even if proved, afford neither a defense to the merits of the case nor provide the defendant with a cause of action under the FDCPA.  The FDCPA merely provides a means for seeking an award of attorney's fees if the defendant prevails on the merits and then files a motion for attorneys fees and proves that the suits were brought in bad faith and for the purpose of harassment. . . *Thus, the statute provides relief, but not a claim, to a defendant in an action brought under the FDCPA.*

*Id.* at *1 (emphases added)(citations omitted).  And, in *Chlanda v. Wymard,* 1994 WL 583124 *1 (S.D.Ohio Aug. 16, 1994), the court was no less emphatic, concluding:

> *The language in 15 U.S.C. 1692k(a)(3) . . . clearly contemplates not the pleading of a counterclaim whose cause of action is not yet ripe for adjudication by the court, but rather a motion submitted to the trial court's discretion*, if, but only if, the court has first resolved the merits of the federal claims against the creditor and the court has further found that the action was brought in bad faith and for the purpose of harassment.

(emphases added).  *Accord: Hardin v. Folger,* 704 F.Supp. 355, 357 (W.D.N.Y. 1988)("I am persuaded . . . [that] section 1692k provides *relief,* but not a claim, to defendants in an action under the Act.  If the Court determines that the action is brought in bad faith, defendants' relief is sought properly by motion for attorney's fees.")(emphasis in

4

original); *Bailey v. Clegg, Brush and Associates, Inc.,* 1991 WL 143461*3 (N.D.Ga. June 14, 1991)("The court recognizes that [section 1692k(a)(3) neither creates a defense to a claim under the FDCPA nor provides a counterclaim.")(citation omitted). *See Micare v. Foster & Garbus,* 132 F.Supp.2d 77, 82 (N.D.N.Y. 2001)(recognizing as "premature" any consideration of a fee award under section 1692k(a)(3) "until the merits of the case are determined"). *Cf. Emanuel v. American Credit Exchange,* 870 F.2d 805, 809 (2nd Cir. 1989)(treating malicious prosecution counterclaim as post-judgment request for fees under 1692k(a)(3), and denying same since FDCPA violation occurred); *Leatherwood v. Universal Business Service Company,* 115 F.R.D. 48, 50 (W.D.N.Y. 1987)(treating section 1692k(a)(3) counterclaim as a "request for attorney's fees," and reserving same until final decision on merits). In addition, the case law is replete with examples of FDCPA suits where defendants were found to have properly asserted section 1692k(a)(3) fee requests by way of motion. *See,* e.g., *Johnson v. Eaton,* 80 F.3d 148, 150, 153 (5th Cir. 1996)(post-trial motion rejected as groundless); *Micare, supra* (motion brought after partial 12(b)(6) dismissal of complaint rejected as untimely); *Juras v. Aman Collection Service, Inc.,* 829 F.2d 739, 745 (9th Cir. 1987)(award of fees pursuant to post-trial motion reversed due to absence of bad faith). By contrast, to plaintiff's knowledge only a single reported case – *Ayres v. National Credit Management Corporation,* 1991 WL 66845*5 (E.D.Pa. April 25, 1991) - has held otherwise.[1]

In addition, as a number of courts have recognized, even if section 1692k(a)(3) did constitute or provide a basis for a cause of action, it would be one that is clearly not

---

[1] *Ayres* hardly constitutes persuasive authority, since it fails to analyze or even address the actual language of the statute, and also mischaracterizes *Emanuel* and *Leatherwood* – the only precedent cited - as cases which "have heard defendants' fee requests as counterclaims." In fact, as the above discussion shows, those cases involved just the opposite scenario – i.e., counterclaims treated as fee requests.

yet ripe.  *Taylor, supra; Chlanda; supra; Hardin, supra; Micare, supra; Leatherwood, supra.*

Accordingly, Count I of defendants' counterclaim should be dismissed.

## II. COUNT II IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE.

Count II of defendants' counterclaim is entitled "Abuse of Process" and alleges that "plaintiff filed this suit for ulterior, illegitimate purposes, including to harass, to extort money to which she is not entitled, and to cause [defendants] to incur litigation-related costs and expenses."  Counterclaim, ¶18.  This claim constitutes a blatant and unwarranted attack on plaintiff's First Amendment right to petition and, accordingly, must be dismissed.

The *Noerr-Pennington* doctrine is rooted in First Amendment principles and was formulated to provide protection to litigants who exercise their constitutional right to petition through the courts: "the First Amendment generally immunizes the act of filing a lawsuit from tort liability under the *Noerr Pennington* doctrine."  *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1080 n. 4 (8th Cir. 1999), *reh. den.*   The rationale for the doctrine is that "suits filed against citizens for prior administrative or judicial activities can have a significant chilling effect on the exercise of their First Amendment right to petition the courts for redress of grievances."  *Protect Our Mountain Environment, Inc. v. District Court of County of Jefferson,* 677 P.2d 1361, 1368 (Col. 1984).  *See White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000)("[T]o say that one does not have *Noerr-Pennington* immunity is to conclude that one's petitioning activity is unprotected by the First Amendment.")   While the doctrine arose initially in the context of antitrust litigation, *Noerr-Pennington* "has been expanded to apply to petitions to courts and

6

administrative agencies, as well as to preclude claims other than those brought under the antitrust laws." *Oregon Natural Resources Council v. Mohla,* 944 F.2d 531, 533-34 (9th Cir. 1991). As has been stated: "'the purpose of *Noerr-Pennington* as applied in areas outside the antitrust field is the protection of the right to petition.'" *Cardtoons v. Major League Baseball Players Association,* 208 F.3d 885, 889 (10th Cir. 2000)(*en banc*), quoting *We, Inc. v. City of Philadelphia,* 174 F.3d 322, 326-27 (3rd Cir. 1999). Indeed, with the single exception of cases brought under the National Labor Relations Act, the doctrine "applies equally in all contexts." *White,* 227 F.3d at 1231. *See,* e.g., *Suburban Restoration Co. v. ACMAT Corp.,* 700 F.2d 98 (2nd Cir. 1983)(applying *Noerr-Pennington* to protect lawsuit from challenge under Connecticut unfair trade practice statute and common law tortious interference claim); *Baltimore Scrap Corp. v. David J. Joseph Co.,* 81 F.Supp.2d 602, 620 (D.Md. 2000), *aff'd* 237 F.3d 394 (4th Cir. 2001)(*Noerr-Pennington* immunity extends to a variety of common law claims). This includes the common law tort of abuse of process. As one court has declared: "It is now clear that the doctrine has been extended to confer immunity from a variety of tort claims, including claims of tortious interference and abuse of process." *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,* 189 F.Supp.2d 385, 392 (E.D.Va. 2002). *See VIM, Inc. v. Somerset Hotel Assoc.,* 19 F.Supp.2d 422, 430 (W.D.Pa. 1988)(noting it is "well settled in this circuit" that claims for malicious use of process "are subject to *Noerr-Pennington* immunity"); *Baltimore Scrap,* 81 F.Supp.2d at 620 (noting *Noerr-Pennington's* applicability to malicious prosecution and abuse of process claims).[2]

---

[2] It is also worth pointing out that *Noerr-Pennington* immunity encompasses conduct - such as the sending of a statutorily-mandated demand letter pursuant to G.L. c. 93A – which is "reasonably and normally attendant upon effective litigation." *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1367 (5th Cir.

It is therefore well-settled that an abuse of process claim filed in response to, and as an attack on, a civil lawsuit must be dismissed under *Noerr-Pennington* unless the suit is shown to be a complete "sham," i.e., "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, and subjectively motivated by bad faith."  *Porous,* 186 F.3d at 1080 n. 4, citing *Professional Real Estate Investors Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 61-62, 113 S.Ct. 1920 (1993).  Given the overriding importance of protecting petitioning activity, "the sham litigation exception to *Noerr-Pennington* immunity must be construed narrowly."  *Kane v. Winn,* 319 F.Supp.2d 162, 219 (D.Mass. 2004), citing *Prof'l Real Estate Investors, Inc.,* 508 U.S. at 55-56.  As a result, "it is extremely doubtful that the initiation of a single lawsuit can fit within a 'sham exception.'"  *Surgidev Corp. v. Eye Tech., Inc.,* 625 F.Supp. 800. 803 (D.Minn. 1986).

The burden of demonstrating that plaintiff's suit is a "sham" falls squarely on the defendants:

> Where, as here, a plaintiff sues another for alleged misuse or abuse of the administrative or judicial processes of government, and the defendant files a motion to dismiss by reason of the constitutional right to petition, the plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment . . .

*Scott,* 216 F.3d at 915.  As the following demonstrates, defendants cannot carry their burden as a matter of law because the First Amended Complaint ("FAC") is not "objectively baseless."

---

1983).  *See DirecTV v. Milliman,* 2003 WL 23892683 *7 (E.D.Mich. Aug. 26, 2003)("Clearly, pre-suit demand letters are a type of conduct protected by the doctrine.").

The first four counts of the FAC all arise from the core allegation that defendants attempted to collect a consumer debt from plaintiff, and eventually sued her, even though it possessed no documentation that they owned the debt or had a legal right to collect the debt.  Such conduct, if proven, would clearly violate section 1692e(2)(A) of FDCPA, which prohibits the misrepresentation of the character or legal status of a debt.  It would also violate section 1692e(5), which prohibits making a threat (such as bringing a lawsuit) which cannot legally be taken.   This misconduct would also constitute unfair and/or deceptive acts and practices in violation of G.L. c. 93A, section 2.[3]  Defendants admit sending correspondence to plaintiff regarding the alleged debt and filing suit against plaintiff.  AAC, ¶¶13, 16.  They also do not deny plaintiff's allegation that when she appeared at the court hearing she learned "that [Commonwealth's] attorney did not have any documents in her file which showed that plaintiff ever possessed or used the credit card in question, or which showed that Commonwealth owned or otherwise was entitled to bring suit on the alleged debt." AAC, ¶19.  Clearly, therefore, these counts cannot be considered "objectively baseless."

Counts V-VII of the FAC are grounded on the central contention that defendants' collection activity was unlawful because they were not licensed as debt collectors in Massachusetts as required by G.L. c. 93, §24A(a).  Section 24H of Chapter 93 provides that failing to comply with the licensing requirement is a violation of G.L. c. 93A, section 2, and a number of courts have also held such failure to violate FDCPA.  *See*, e.g., *Gaetano v. Payco, Inc.,* 774 F.Supp. 1404 (D.Conn. 1990); *Ferguson v. Credit Mgmt.*

---

[3] Under Massachusetts law, the violation of a federal consumer protection statute such as FDCPA constitutes a *per se* violation of G.L. c. 93A, section 2.  940 CMR 3.16(4).  In addition, a knowingly false or misleading statement regarding the character or status of an alleged debt violates 940 CMR 7.07(2) and hence G.L. c. 93A, section 2.

*Control, Inc.,* 140 F.Supp.2d 1293 (M.D.Fla. 2001); *Kuhn v. Account Control Technology, Inc*., 865 F.Supp. 1443 (D.Nev. 1994).   Here, defendants admit that their business involves purchasing consumer debt (AAC, ¶8), that they carried out debt collection efforts against plaintiff (AAC, ¶13), and that they are not licensed as debt collectors.  AAC, ¶15.  Moreover, while they dispute that they are required to be licensed, they do so without explanation.  AAC, ¶15.  Thus, by no stretch of the imagination can it be said that these counts are "objectively baseless."

Counts VIII and IX set forth claims based on the statement contained in a dunning letter to plaintiff that the letter constituted defendants' "final attempt" to resolve the alleged debt prior to trial.  This representation was false and unlawful, as plaintiff received a subsequent letter not long after which indicated unequivocally that a pre-trial resolution was still possible.  *See* FAC, Exhibits A and B.  Section 1692e of FDCPA prohibits the use of any false, deceptive, or misleading representation in connection with the collection of any debt.  In determining whether a particular communication from a debt collector is unlawfully deceptive, the courts must apply an objective "least sophisticated consumer" standard.  *See*, e.g., *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2nd Cir. 1996); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir. 1985).  Moreover, proof of actual deception is irrelevant to liability under FDCPA.  *Id.*  On its face, therefore, the subject letter was false, deceptive, and misleading in violation of FDCPA and G.L. c. 93A, section 2.  At a minimum, it was certainly arguably so.  Counts VIII and IX are therefore entitled to *Noerr-Pennington* protection.

In sum, it is crystal-clear that none of plaintiff's claims can reasonably be considered a "sham."  As the courts recognize, the critical question is not whether

10

plaintiff "ultimately will prevail on the merits," but only that she "has a legitimate basis for bringing [the] suit." *St. Jude Medical, Inc. v. Leverenz,* 2004 WL 251839 *3 (D.Minn. Feb. 9, 2004). *See VIM, supra* (the only "relevant inquiry" is whether plaintiff "could have reasonably believed" that she "might be successful"). That such a basis exists as to all plaintiff's claims cannot be seriously questioned. Therefore, the existence of any ulterior or illegitimate motive is irrelevant, since "[such] motive alone would not support application of the 'sham' exception of the *Noerr-Pennington* doctrine." *St. Jude,* at *3. *See DirecTV,* 2003 WL at *8, quoting *Santana Prods v. Bobrick Washroom Equip., Inc.* 249 F.Supp.2d 463, 492 (M.D.Pa. 2003)(where there is objective basis for suit, "*Noerr-Pennington* immunity 'applies even though the defendant had employed deceptive and unethical means'"). Here, of course, defendants have not pled any specific facts to support their contention of ulterior motive, but instead have only made generalized, mean-spirited (and essentially boilerplate) accusations.

Accordingly, for all the above reasons Count II of the counterclaim should be dismissed.

### III.  COUNT II MUST BE DISMISSED PURSUANT TO G.L. c. 231, §59H.

A close relative of the federal Noerr-Pennington doctrine is the Massachusetts "anti-SLAPP" statute, G.L. c. 231, §59H, which provides in relevant part:

> In any case in which a party asserts that the civil claims, counter-claims, or cross claims against said party are based on said party's right of petition under the constitution of the United States or of the Commonwealth, said party may bring a special motion to dismiss. . . . . The court *shall* grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law, and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or

11

>  defense is based.

(emphases added).

The statute defines the phrase "a party's exercise of its right of petition" as follows:

> . . . any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

The Legislature's purpose in enacting the anti-SLAPP statute was "to immunize parties from claims 'based on' their petitioning activities." *Duracraft Corp. v. Holmes Prods. Corp.,* 427 Mass. 156, 167 (1998). Thus, it "provides broad protections for individuals who exercise their right to petition *from harassing litigation and the costs and burdens of defending against retaliatory lawsuits*." *Id.,* at 161-162 (emphases added).[4]

The Supreme Judicial Court has made it abundantly clear that the statute protects petitioning activities which involve purely private matters. In *Office One, Inc. v. Lopez,* 437 Mass. 113, 121 (2002), plaintiff sued various parties for allegedly interfering with its attempt to purchase a condominium from the FDIC and parking spaces from the City of Cambridge. The trial court granted defendants' special motion to dismiss pursuant to G.L. c. 231, §59H. Rejecting plaintiff's contention that the conduct complained of was

---

[4] The anti-SLAPP/*Noerr-Pennington* kinship has been noted by at least one court. *DirecTV,* 2003 WL at *7 (dismissing counterclaims on basis of *Noerr-Pennington* while recognizing that "other lawsuits involving DirecTV have been dismissed based on similar state anti-SLAPP laws").

12

not of the type immunized by the statute, the Supreme Judicial Court upheld the dismissal, declaring:

> Although it is true that "the typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects, *the statute provides broad protection for other petitioning activities as well. It is not necessary that the challenged activity be motivated by a matter of public concern.*

(emphases added)(citations omitted).

An "abuse of process" claim is the very kind of retaliatory action which section 59H prohibits. In *Fabre v. Walton,* 436 Mass. 517 (2002), the subject of a domestic abuse restraining order issued pursuant to G.L. c. 209A brought an abuse of process suit against the complainant. The Court held that since the abuse of process claim was brought directly in response to litigation, it had to be dismissed, explaining: "The filing of a complaint for an abuse protection order and the submission of supporting affidavits are petitioning activities encompassed within the protection afforded by G.L. c. 231, §59H." *Id.* at 523. *See,* also, *Donovan v. Gardner,* 50 Mass.App.Ct. 595 (2000)(upholding anti-SLAPP dismissal of abuse of process claim).

Here, there can be no doubt that Count II of defendants' counterclaim is based on plaintiff's right of petition in bringing the instant lawsuit. Its essential allegation is: "The plaintiff filed this suit for ulterior, illegitimate purposes, including to harass, to extort money to which she is not entitled, and to cause Commonwealth and Goldstone to incur litigation-related costs and expenses." Counterclaim, ¶18. It goes on to conclude: "This suit is an abuse of process." Counterclaim, ¶20. On their face, these allegations bring the counterclaim within the scope of section 59H. And the particular sordid motives

which defendants attribute to plaintiff in filing suit carry absolutely no weight..  As the Supreme Judicial Court has emphasized:

> *Contrary to the plaintiffs' apparent belief, the motive behind the petitioning activity is irrelevant at this initial stage.  The focus solely is on the conduct complained of, and, if the only conduct complained of is petitioning activity, then there can be no other "substantial basis" for the claim.*

*Office One,* 437 Mass. at 122 (emphases added)(citations omitted).  Indeed, as one prominent commentator has concluded:

> The initiation of a lawsuit is also protected petitioning activity under the Anti-SLAPP Act.  So all abuse of process claims are necessarily "based on" petitioning activity, thereby triggering a special motion every time.
>
> *How do you defeat the special motion when it inevitably arises?  Forget about arguing that your abuse of process claim is really based on your opponent's "ulterior motive" or "illegitimate purpose," as opposed to the petitioning itself.  That argument has been twice considered, and twice rejected, by the SJC . . . Conduct is the only thing that matters, and process is the only conduct that appears anywhere in the tort's [abuse of process] definition.*

Lewis, Adam N., Abuse of Process and Anti-SLAPP: Proceed with Caution."  *33 Massachusetts Lawyers Weekly 63* (citations omitted)(emphases added).[5]

Since the abuse of process counterclaim clearly stems from plaintiff's petitioning activities, dismissal is mandatory unless the defendants demonstrate that the complaint is "devoid of any reasonable factual support or any arguable basis in law."  For the reasons set forth in Section II, *supra,* defendants cannot possibly sustain this burden.  Moreover,

---

[5]Attorney Lewis also notes that the *Fabre* court specified that, in order to survive a special motion to dismiss, an abuse of process claim must allege some "subsequent misuse of the process."  *Id.,* quoting *Fabre,,* 436 Mass. at 519, n. 3.   Defendants do not allege that plaintiff has engaged in any such conduct, and indeed there are no facts which would support such an allegation.

just as the *Noerr-Pennington* cases instruct, it is irrelevant to an anti-SLAPP analysis that plaintiff's positions "'may turn out to be wrong in the end.'" *Donovan,* 50 Mass.App.Ct. at ., *quoting Home Savings Bank of America, FSB v. Camillo,* 45 Mass.App.Ct. 910, 912 (1998). The sole issue is whether plaintiff's claims are "colorable," and of that there is no doubt. *Id.* at 600.[6]

### Conclusion and Request for Attorney's Fees

For all the above reasons, Counts I and II of defendants' counterclaim should be dismissed. Moreover, if the dismissal of Count II results in whole or in part from plaintiff's special motion to dismiss brought pursuant to G.L. c. 231, §59H, the plaintiff should be awarded reasonable attorney's fees.[7]

### Certification Pursuant to Local Rule 7.1(A)(2)

I, Kenneth D. Quat, hereby certify that on August 25, 2005, I sent a letter to defendants' counsel via fax and first class mail indicating that plaintiff believed that defendant's initial counterclaim (brought under 15 U.S.C. 1692k(a)(3)) to be without

---

[6] Defendants may attempt to argue that a special motion to dismiss pursuant to G.L. c. 231, §59H may not be brought in a federal court action. However, such a contention appears to have been rejected by a majority of the courts which have considered the issue. *See,* e.g., *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 970-73 (9th Cir. 1999)(motion under California anti-SLAPP statute permissible); *International Brominated Solvents Ass'n v. American Conf. of Governmental Industrial Hygienists, Inc.,* 2005 WL 1220850 *2 (M.D.Ga. May 20, 2005)(adjudicating motion under Georgia anti-SLAPP statute); *DirecTV v. Buckley,* 276 F.Supp. 1271, 1275 (N.D.Ga. 2003)(rejecting as "without merit" any contention that Georgia anti-SLAPP statute does not apply in federal court); *Card v. Pipes,* 2004 WL 1403007 (D.Or. June 22, 2004)(award of counsel fees after allowance of motion under Oregon anti-SLAPP statute); *Milford Power Limited Partnership v. New England Power Co.,* 918 F.Supp. 471, 488-89 (D. Mass. 1996)(assuming that Massachusetts anti-SLAPP statute applies in federal court but denying motion without prejudice on basis of insufficient authority that it protects businesses as well as individuals). *Contra: Stuborn Limited Partnership v. Bernstein,* 245 F.Supp.2d 312, 314-17 (D.Mass. 2003)(ruling that Massachusetts statute is primarily procedural in nature and that its procedural provisions conflict with Federal Rules of Civil Procedure).

[7] The statute provides that "[i]f the court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters."

15

foundation and requesting that a conference regarding same.  On August 26, 2005, defendants' counsel responded in writing, stating that plaintiff's position "is incorrect and contradicted by decision law," but not providing any specific authority.  On August 29, 2005, I called defendants' counsel to inquire what authority he might cite to me in support of defendants' position.  Defendants' counsel reiterated that he had some but did not disclose it.  In a letter faxed later that day, defendants' counsel indicated that he would provide authority when the time came to "fully brief the issue."  The next day, August 30, defendants filed their "Amended Answer and Counterclaim," which re-asserted Count I of the original counterclaim and added a second count alleging abuse of process.  On September 6, 2005, I sent a letter to defendants' counsel via fax and first class mail indicating plaintiff's position that the new Count II was subject to dismissal on the basis of the *Noerr-Pennington* doctrine and the Massachusetts "anti-SLAPP" statute, and asking that defendants contact me by September 8 if they wished to confer or provide me with authority to the contrary.  As of present, I have not heard from defendants' counsel regarding said requests.

      Respectfully submitted:
      Isabelle C. Jackson,
      Plaintiff

      By her attorney:

      /s/Kenneth D. Quat
      BBO 408640
      Law Office of Kenneth D. Quat
      9 Damonmill Square, Suite 4A-4
      Concord MA 01742
      978-369-0848
      ken@quatlaw.com