UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE C. JACKSON, <br><br> Plaintiff, <br><br> V. <br><br> COMMONWEALTH RECEIVABLES, INC., <br> CHAD E. GOLDSTONE, <br><br> Defendants. | NO. 05 11381MLW |

## DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(c), the defendants Commonwealth Receivables, Inc. and Chad Goldstone (collectively "Commonwealth") move for judgment in their favor as to Counts III, IV, VII, and X of the First Amended Complaint, all of which purport to assert claims pursuant to Chapter 93A. In support of this Motion, Commonwealth states as follows:

### ESSENTIAL BACKGROUND[1]

1. The plaintiff Isabelle Jackson is a debtor who incurred an obligation on a credit account subsequently purchased by Commonwealth. After receiving notice from Commonwealth of its ownership of her outstanding obligation, the plaintiff communicated with Commonwealth, acknowledged her liability, and offered to settle the obligation. (Am. Comp. ¶¶ 11-12; Am. Answer Aff. Def. ¶ 16, CC ¶¶ 3-4)

---

[1] The following facts come from the pleadings. Citations are to paragraphs of the Amended Complaint or the Amended Answer.

2. To settle her indebtedness and pursuant to her promise to Commonwealth, Jackson in November 2004 sent Commonwealth an electronic check in the amount of $300. (Am. Answer Aff. Def. ¶ 16, CC ¶¶ 4-6)

3. Commonwealth attempted to negotiate the check, but it bounced. Commonwealth subsequently re-presented the check and it bounced again. (Am. Answer CC ¶¶ 5-6)

4. Commonwealth brought a small claims collection action against the plaintiff. When the matter was called for a hearing, Commonwealth's coverage attorney apparently was unprepared to go forward. The small claims clerk ruled in favor of the plaintiff. (Am. Comp. ¶¶ 16-20; Am. Answer ¶¶ 16-17, 20)

5. The plaintiff has never made any payment to Commonwealth. (Am. Comp. ¶¶ 11-20; Am. Answer Aff. Def. ¶ 10, 21, CC ¶¶ 1, 9, 13)

6. On June 28, 2005, the plaintiff issued to Commonwealth a letter purporting to be a demand pursuant to Massachusetts General Laws Chapter 93A. (Am. Comp. ¶ 32; Am. Answer Aff. Def. ¶ 11)

7. On June 29, 2005, the plaintiff filed her original Complaint in this Court. She did not effect service of process or otherwise provide Commonwealth notice. (See Complaint and Docket)

8. On July 11, 2005, the plaintiff issued a follow-up letter to Commonwealth that purported to "correct" the June 28 letter. Between them, these letters purport to allege that the plaintiff is the representative of a class. The June 28/July 11 letters demand $5,000 for the plaintiff individually. (Am. Answer Aff. Def. ¶ 11)

9. Neither letter makes a specific monetary demand with respect to the alleged class. Instead, the letters essentially ask Commonwealth to disgorge all money that it has made in the

last four years or, alternatively, $25.00 for <u>every</u> debtor that Commonwealth has corresponded with in the last four years. (Am. Answer Aff. Def. ¶¶ 11-12)

10. On July 27, 2005, only twenty-nine days after her June 28 letter, and only sixteen days after her July 11 letter, the plaintiff filed her Amended Complaint. Only after filing the amended complaint did the plaintiff attempt to provide Commonwealth any notice. (Am. Answer Aff. Def. ¶¶ 11-13, CC ¶¶ 15-16)

11. In subsequent conversations between counsel concerning the plaintiff's position as to the purported class aspects of her claims, plaintiff's counsel <u>repeatedly</u> has refused to state a monetary demand or engage in negotiations. (Am. Answer Aff. Def. ¶ 12, CC ¶ 17)

12. In order to avoid the expense and inconvenience of further litigation, and without admission or prejudice, Commonwealth has made several good faith offers to the plaintiff. The plaintiff has refused to provide a fair demand or to respond beyond rejecting Commonwealth's proposals. (Am. Answer Aff. Def. ¶ 12, CC ¶ 17)

## ARGUMENT

I. THE PLAINTIFF HAS FAILED TO COMPLY WITH 93A'S PROCEDURAL REQUIREMENTS.

A. <u>The Plaintiff Has Never Made A Proper Demand.</u>

A formal demand letter is a prerequisite to suit under G.L. c. 93A, § 9. To satisfy the statute, a 93A demand letter must, among other things, list the specific deceptive practices and damages claimed. <u>See, e.g.</u>, <u>Entrialgo v. Twin City Dodge</u>, 316 Mass. 812, 813 (1975); <u>Cassano v. Gogos</u>, 20 Mass. App. Ct. 348, 350-51 (1985). In addition, and of particular importance here, a proper 93A demand must contain a request for relief that serves the demand letter's twin purposes of: (1) promoting negotiation; and (2) controlling damages. <u>Spring v. Geriatric Auth. of Holyoke</u>, 394 Mass. 274, 288-89 (1985). <u>See also</u> <u>Slaney v. Westwood Auto, Inc.</u>, 366 Mass.

688, 704-705 (1975). The plaintiff's purported demand letters in this case fall far short of this standard.

The purported demands are insufficient because they do not describe any damages suffered by the plaintiff, and do not state a specific monetary amount or a request for relief that will promote negotiation and control damages. Rather than allege real damages or provide a good faith demand, the letters essentially demand that Commonwealth empty its coffers and turn over <u>all</u> money it has made -- or pay a $25.00 penalty for <u>all</u> letters it has issued -- over the last <u>four</u> years. Exactly how much the plaintiff means by this is anyone's guess, and this is <u>precisely</u> the problem. The plaintiff's manifest goal is to put Commonwealth in a position where it has to <u>guess</u> as to the amount necessary to settle the purported claims and bid against itself, while the plaintiff remains in a position of no commitment and maximum discretion, free to say "No - not enough" every time there is a good faith offer.

This approach is deeply offensive to the policy goals underlying Chapter 93A and the demand requirement. To begin, this approach stifles negotiation. True, fair negotiation is a dialogue, a process of give and take. That is not possible here. The plaintiff's so-called demand letters create no context for negotiation. Rather, they require Commonwealth to <u>guess</u> at what sum will settle the case, because the plaintiff will not say. The <u>only</u> specific number the plaintiff has demanded is $5,000. Commonwealth offered it; the plaintiff said "No." Commonwealth repeatedly has requested a good faith demand. The plaintiff repeatedly has refused. There has not been and cannot be any real negotiation here because of the plaintiff's refusal to comply with the statute.

Nor do the plaintiff's purported demands serve the statutory purpose of acting to control damages, for essentially the same reasons that they exclude negotiation. The plaintiff's basic

4

demand is comical: turn over <u>all</u> money earned over the last four years, or at least turn over a confiscatory penalty for every letter you have issued over the last four years. There is no possibility of damage control here -- just the opposite. These "demands" imply liability that for all practical purposes is unlimited, uncontrolled. Thus, the putative demands are violative of the purposes of Chapter 93A's demand requirement, not to mention basic considerations of good faith and fair play.

This is particularly so considering the events underlying this dispute. The plaintiff is an undisputed debtor who incurred credit card debt and failed to pay it. After Commonwealth acquired ownership of the debt, it undertook standard collection-related activities. The plaintiff <u>agreed</u> that she was indebted and offered to pay Commonwealth $300.00. She then issued a check to Commonwealth that was <u>twice</u> dishonored. Commonwealth brought a small claims action against the plaintiff. When the case was called for trial, coverage counsel apparently was unprepared, and the small claims clerk ruled in the plaintiff's favor. The plaintiff has <u>never</u> paid Commonwealth <u>anything</u> -- she has <u>no</u> harm or loss. Yet she is now in federal court and emboldened to reject repeated four-figure settlement offers from Commonwealth.[2]

The problem here is that the plaintiff's outrageous "demands" bear no relationship whatsoever to losses suffered by the plaintiff, losses to the purported, uncertified class, or the risks and uncertainties of litigation -- there is no connection to reality. So far as appears from the demands, the real agenda of plaintiff's counsel is to harass and annoy Commonwealth, extort an

---

[2] Because the plaintiff has no loss and is asserting technical, statutory claims, the requirement of a specific, good faith demand is of particular importance. She certainly has no harm or loss that is apparent on the record. In truth, she realized an undeserved <u>windfall</u> when the small claims clerk ruled in her favor.

unreasonable settlement, and, if possible, put it out of business, not to promote negotiation, control damages, or resolve the matter on terms favorable to the plaintiff.

This is precisely why the plaintiff's correspondence does not comply with Chapter 93A and does not constitute a sufficient Chapter 93A demand. In effect, it is as if the plaintiff had made no demand at all other than for Commonwealth to close its doors. "Clearly such an exorbitant demand for relief is hardly likely to promote negotiation and settlement or to operate as a control on damages." Spring, 394 Mass. at 288-289 (affirming judgment notwithstanding the verdict for defendant on 93A claim where plaintiff sought "exorbitant" relief); Frankston v. Teicholz, No. 96-0316, Memo. and Decision on Mot. for Sum. Judg., at 7-8 (Super. Jan. 29, 1999) (granting summary judgment in part because demand did not serve statutory purposes; copy attached as Exhibit A). Contrast, e.g., Brandt v. Olympic Constr. Inc., 16 Mass. App. Ct. 913 (1983) (demand sufficient where compensation at issue apparent).

    B.    The Plaintiff Failed To Issue A Proper Demand And Then Wait 30 Days Prior To Filing Suit.

Chapter 93A also requires that those alleging 93A claims must wait 30 days following the issuance of a proper demand before filing suit. York v. Sullivan, 369 Mass. 157, 163 (1975); Wall v. Altenhoff, 57 Mass. App. Ct. 1117 (2003); Carter v. Empire Mut'l Ins. Co., 6 Mass. App. Ct. 114, 129-130 (1978). The plaintiff violated this requirement in two ways.

First, for the reasons provided above in Section A, the plaintiff has yet to provide a proper demand in compliance with Chapter 93A. As such, all counts of the amended complaint purporting to allege 93A violations are premature. Second, even if it is assumed arguendo that the plaintiff's letters of June 28 and July 11 could constitute a proper 93A demand, the 93A aspects of the suit still are premature and were brought prior to the expiration of the statutory 30-day period. The letter of June 28 preceded the July 27 filing of the amended complaint by 29

6

days. That by itself is a statutory violation. The plaintiff then issued the July 11 letter expressly to supplement and "correct" an error in the June 28 correspondence. As such, the plaintiff's 93A correspondence -- such as it is -- consists of <u>two</u> letters, the most recent on July 11, only about <u>two weeks</u> before the amended complaint was filed. The plaintiff has violated Chapter 93A's 30-day requirement.

It is undisputed on the pleadings that the plaintiff violated Chapter 93A's requirement of a proper demand, and its requirement that the plaintiff wait 30 days following the issuance of a proper demand to file suit. Commonwealth is entitled to judgment on the pleadings as to all 93A aspects of the suit.

II.   THE PLAINTIFF'S FAILURE TO PROVIDE A FAIR DEMAND VIOLATES THE PRINCIPLE OF LOCAL RULE 16.1(C).

Local Rule 16.1(C) provides in pertinent part that "the plaintiff shall present written settlement proposals to all defendants no later than ten (10) days before the date for the scheduling conference." This rule is founded on a principle and policy that the plaintiff should present a good faith settlement demand to the defendants at an early stage of the litigation. As described in detail above, the plaintiff here has failed to do that. Instead, apparently motivated by an ulterior desire to harass the defendants, extort an unreasonable settlement from them, and, if possible, put them out of business, the plaintiff has issued purported demand letters that effectively seek every dollar that the plaintiffs have made over the last four years. For all practical purposes, in violation of the spirit of Local Rule 16.1(C), the plaintiff has made no demand.

## CONCLUSION

For all of the foregoing reasons, this Motion should be granted and judgment dismissing Counts III, IV, VII, and X should issue.

COMMONWEALTH RECEIVABLES, INC. and
CHAD E. GOLDSTONE

By their attorney,

/s/ John J. O'Connor
John J. O'Connor
BBO # 555251
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
Dated: September 9, 2005        (617) 951-2100

## CERTIFICATE OF COMPLIANCE

I, John J. O'Connor, hereby certify that I wrote to and spoke with plaintiff's counsel in compliance with Local Rule 7.1.

/s/ John J. O'Connor
John J. O'Connor

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the attached Defendants' Motion For Partial Judgment On The Pleadings by first class mail on Kenneth D. Quat, Esq., 9 Damonmill Square, Concord, MA  01472.


Dated:  September 9, 2005                                 John J. O'Connor      
                                                       John J. O'Connor


621604_1
14851-91319

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.
SUPERIOR COURT
CIVIL ACTION
No. 96-0316

MICHAEL FRANKSTON

vs.

BARRY B. TEICHOLZ

## MEMORANDUM AND DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Michael Frankston ("Frankston") brought this action against Barry B. Teicholz ("Teicholz"), alleging that Teicholz committed legal malpractice (Counts I through III) and violated Chapter 93A (Count IV) in connection with his representation of Frankston in an arbitration proceeding. Teicholz filed this motion seeking summary judgment on all four counts of Frankston's complaint. For the reasons given below, Teicholz' motion for summary judgment is **ALLOWED**

### BACKGROUND

To the extent that factual claims in Frankston's affidavit contradict statements previously made by him under oath at his deposition or in response to interrogatories (see, e.g., ¶ 9, third sentence and ¶ 25), they are disregarded. "[A] party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath . . ." Morrell v. Precise Engineering, Inc., 36 Mass. App.ct. 935, 937 (1994), quoting O'Brien v. Analog Devices, Inc., 34 Mass. App. Ct. 905, 906 (1993). In addition, in ruling on this motion, the court has disregarded statements appearing in Frankston's affidavit which are not based on personal

EXHIBIT A

knowledge, as well as speculative and conclusory statements and opinions he is not competent to render. See rule 56(c) Mass. R. Civ. P.; Symmons v. O'Keefe, 419 Mass. 288, 295 (1995); HRPT Advisors, Inc. v. MacDonald, Levine, Jenkins & Co, P.C., 43 Mass. App. Ct. 613, 622 (1997). Putting aside the above, the following are established by the record as undisputed material facts for the purpose of this motion.

In 1990, Frankston decided to enlarge his house in Lincoln, Massachusetts by adding a new wing of approximately 5000 square feet. To that end, he hired an architect, Maximilian Ferro ("Ferro"), and a general contractor, Rene C. Lamarre Co., Inc. ("Lamarre"). In 1991, Frankston fired Ferro and Lamarre ceased work on the project. In 1992, Lamarre submitted a demand for arbitration pursuant to a standard arbitration clause in its contract with Frankston. Lamarre alleged that Frankston had repudiated the contract and wrongfully prevented it from completing its work. Lamarre sought damages of approximately $140,000 representing the value of work completed and consequential damages. .

Teicholz was retained by Frankston to represent him in the arbitration proceedings. Teicholz had previously represented approximately nine parties in construction disputes relating to approximately twenty projects, and had represented parties in at least two formal construction arbitration proceedings. The Lamarre-Frankston arbitration proceeding was conducted over the course of nine days in the summer and fall of 1992. Frankston asserted a $2 million counterclaim

Frankston was actively involved in and frequently expressed dissatisfaction to Teicholz during the arbitration proceedings. He attended six days of the proceedings. During the course of the arbitration, Frankston asked Teicholz to spend more time preparing witnesses, to request the production of additional documents, and to engage in more extensive and thorough cross-

examinations. Frankston sent letters to Teicholz complaining about the progress of the arbitration and criticizing Teicholz. A letter dated July 13, 1992 states that "I might be telling you how to do your job...I believe you're a good lawyer but I (sic) rather act like a crazed ranting client...than risk the chance that something is left undone." A letter dated September 19, 1992, also describes Teicholz as a good lawyer, but describes steps Teicholz should take and concludes with the demand that Teicholz "[d]o something about this and get results." On November 3, 1992, the arbitrators decided in favor of Lamarre and awarded damages in the amount of $72,794. Teicholz informed Frankston of the decision by letter dated November 10, 1992. Frankston responded by letter dated November 15, 1992, in which he stated that Teicholz had made a "profound mistake...in handling the testimony of the architect Maximilian Ferro" by not making it explicit that Ferro was committing perjury.

In early December 1992, Frankston retained new counsel, Harvey Heafitz, to handle the appeal of the arbitrators' decision. At Frankston's request, Teicholz forwarded Frankston's case file to Heafitz on or about December 1, 1992. On December 4, 1992, Heafitz filed a verified complaint to vacate the arbitration award in Middlesex Superior Court. Teicholz did not represent Frankston in the Superior Court or subsequent proceedings. The Superior Court affirmed the arbitration award in favor of Lamarre. Teicholz appealed. The Appeals Court ruled that the appeal as presented was frivolous, and assessed double costs. No. 95-P-241 (1996).

On September 15, 1995, Frankston sent to Teicholz what purported to be a demand letter pursuant to G.L. c. 93A, § 9. In the letter, Frankston charged that Teicholz had misrepresented his experience, skills and abilities in the area of construction litigation. No harm resulting from the alleged misrepresentation is detailed in the letter other than the $72,794 judgment in favor of

Lamarre and a general reference to costs attendant to the arbitration and litigation. Frankston demanded damages in the amount of $2 million in this letter.

On January 17, 1996, Frankston filed this action.

## DISCUSSION

This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 91983); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party's case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The court assumes that all of the facts set forth in the nonmoving party's affidavits are true (except to the extent that they contradict statements previously made under oath) and that any inferences favorable to the nonmoving party should be drawn. Coveney v. President &Trustees of College of Holy Cross, 388 Mass. 16, 17 (1983). A pro se plaintiff is held to the same standards as counsel. Jordan v. Register of Probate for Hampden Cnty., 426 Mass. 1020, 1020 (1998).

## STATUTE OF LIMITATIONS

Teicholz claims that he is entitled to summary judgment on Counts I, II, and III of Frankston's complaint because the legal malpractice claim is barred by the statute of limitations. Legal malpractice action must be commenced within three years from the time a cause of action

accrues. G.L. c. 260, § 4. A cause of action accrues on the happening of an event likely to put a plaintiff on notice that he was harmed and of what the cause of the harm was. Notice does not require that a plaintiff know that there was a breach of duty, precisely how the defendant breached the duty or the extent of his harm. Williams v. Ely, 423 Mass. 467, 473 (1996); Riley v. Presnell, 409 Mass. 239, 243 (1991); Bowen v. Eli Lilly & Co., 408 Mass. 204, 206-207 (1990); Mass. Electric Co. v. Fletcher, Tilton & Whipple, P.C., 394 Mass. 265, 268 (1985). Hendrickson v. Sears, 365 Mass. 83, 89-91 (1974). 458 (1980); Swasey v. Barron, 46 Mass. App. Ct. 127, 129-30 (1999). The principle "does not require that the plaintiff know or have reason to know that the defendant violated a legal duty to the plaintiff, but only that she knew or had reason to know that she had been harmed by the defendant's conduct." Bowen v. Eli Lilly & Co., 408 Mass. at 206. "The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." Id. at 207. If a defendant in a malpractice action asserts a statute of limitations defense, the burden is on the plaintiff to prove that the action commenced within the limitations period. When the client offers evidence that he did not know of the harm, the lawyer has the burden of coming forward with evidence that the client reasonably should have known of the harm. Williams, 423 Mass. at 475; Riley, 409 Mass. at 243-244; Friedman v. Joblonski, 371 Mass. 482, 487 (1976).

Applying these principles to the undisputed facts, it is clear that Frankston's cause of action accrued at the latest during the first week of December, 1992. In this case, Frankston's allegations of malpractice by Teicholz include inadequate preparation, inadequate document requests, failure to object to evidence, inadequate examinations of witnesses, provision of privileged documents to

opposing counsel,[1] general failure to address Frankston's concerns and misrepresentation as to his expertise in construction arbitrations as evidenced by the above and the fact that during the hearings Teicholz did not appear to be familiar with or known to various individuals involved in construction arbitration.

The record reflects that Frankston was aware of and complained about virtually every claimed failure of Teicholz at the time that it occurred and that all of the claimed failures which are alleged to have caused legal harm to Frankston occurred during the arbitration proceeding and predate the arbitration award. See e.g., excerpts from Frankston Dep., vol. 4, attached as Ex. C to Affidavit of John J. O'Connor; Plaintiff's Answers to Defendant's First Set of Interrogatories Nos. 2, 5 and 7 through 9.

Frankston argues that he did not know that Teicholz' failures amounted to malpractice until after January of 1993. Under the discovery rule, however, the cause of action accrues when the plaintiff knows or should have known that he was harmed by the defendant's conduct. The focus is on discovery of the harm, not discovery of the applicable law or legal theory. Clearly, the cause of action accrued before December 4, 1992 when Frankston received notice of the arbitration award and retained Heafitz. See Cantu v. St. Paul Cos. 401 Mass. 53 (1987) (harm in legal malpractice case does not accrue only when a case is finally concluded and irremediable; even if a plaintiff ultimately prevails on appeal, he is harmed when it becomes manifest that he will incur legal fees

---

[1] The only record example of Teicholz providing privileged documents to Lamarre is Ex. E to Frankston's Affidavit, which consists of a post-it attached to a document which is clearly not privileged. Frankston learned that the privileged material had been turned over to Lamarre by Teicholz when it was entered in evidence during the arbitration proceeding. Frankston Aff. ¶ 23.

for an appeal of an unfavorable decision).[2] Frankston himself states at p. 13 of his Opposition to Defendant's Motion for Summary Judgment, "Frankston's loss became known when he lost the arbitration proceeding."

## CHAPTER 93A

Teicholz claims that he is entitled to summary judgment on Count IV of Frankston's complaint because (1) Frankston's demand letter was insufficient, (2) as a matter of law Teicholz engaged in no unfair or deceptive conduct, and (3) as a matter of law any unfair or deceptive conduct was not causally related to any damages suffered by Frankston. To prevail on a Chapter 93A claim, the plaintiff must allege and prove that he sent a satisfactory demand letter, that the defendant violated the provisions of G.L. c. 93a, § 9 and that he suffered damages as a result of the violation. See also McCann v. Davis, Malm & D'Agostine, 423 Mass. 558, 560-561 (1996).

First, a formal demand letter is a prerequisite to suit under G.L. c. 93A, § 9. To satisfy the statute, the letter must, among other requirements, list the specific deceptive practices and damages claimed. Entrialgo v. Twin City Dodge, 368 Mass. 812, 813 91975); Cassano v. Gogos, 20 Mass. App.ct. 348, 350-351 (1985). The letter also must contain a request for relief that serves the twin purposes of promoting negotiation and controlling damages. Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288-289 (1985). In this case, Frankston demanded $2,000.000. The judgment against him in the underlying case was for $72,794. A demand so disproportionate is no better than no demand at all: "Clearly such an exorbitant demand for relief is hardly likely to promote negotiation and settlement or to operate as a control on damages." Id. at 288-289.

---

[2] Because Frankston had consulted a different lawyer in connection with the matter, the continuing representation doctrine does not apply. See Murphy v. Smith, 411 Mass. 133, 137 (1991); Cantu, 401 Mass. at 58.

Frankston claims that his demand was not exorbitant, because he alleged a $2 million counterclaim in the arbitration proceedings. But there is no evidence in the summary judgment record to support the reasonableness of a claim for damages of $2 million.

Even if the demand letter were sufficient, the Chapter 93A claim fails. The basis of Frankston's Chapter 93A claim is that Teicholz engaged in unfair and deceptive conduct because he did not have as much experience handling construction arbitration matters as he claimed to have when Frankston hired him.[3] To prevail under Chapter 93A the plaintiff must prove a causal connection between the defendant's violation of G.L. c. 93A, § 9 and harm to the plaintiff. Int'l Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 8590 (1983). In this case, the record is devoid of admissible evidence that Frankston suffered damages as a result of the alleged violation. Frankston has failed to adduce any evidence that an attorney who had more experience in arbitrating construction disputes would have adopted a different strategy in the arbitration proceeding or achieved a different result. In contrast, Teicholz points out that at the arbitration Lamarre recovered less than 55% of the damages it claimed in the arbitration. Teicholz also provided an affidavit from John J. Spignesi, who represented Lamarre and specializes in construction litigation. The affidavit qualified Spignesi to render opinions, and stated his opinion that Teicholz' representation of Frankston was consistent with the standards applicable to the average qualified construction litigation attorney. Absent evidence of damages caused by the alleged 93A violation, Teicholz is entitled to summary judgment on Count IV.

---

[3] For purposes of this motion, I assume the very doubtful proposition that such misrepresentations could constitute a violation of Chapter 93A.

## ORDER

For the reasons stated herein, it is therefore **ORDERED** that defendant's motion for summary judgment be and here is **ALLOWED**

_____
Diane M. Kottmyer
Justice of the Superior Court

DATED: January 29, 1999

*Entered 2/9/99*